IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3028-D

| | | |
|---|---|---|
| JUSTIN RANDOLPH MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| OFFICER GEORGE BRIGGS, | ) | |
| | ) | |
| Defendant. | ) | |

Justin Randolph Mitchell ("Mitchell" or "plaintiff") filed this action under 42 U.S.C. § 1983 [D.E. 1]. On August 18, 2010, the court reviewed the complaint pursuant to 28 U.S.C. § 1915, denied plaintiff's motion to appoint counsel, and allowed the action to proceed [D.E. 5]. On November 4, 2010, Mitchell filed a declaration and medical records [D.E. 15]. On December 2, 2010, defendant filed a motion to dismiss [D.E. 16], and plaintiff filed his first set of interrogatories [D.E. 19]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Mitchell about the motion to dismiss, the consequences of failing to respond, and the response deadlines [D.E. 18]. On December 6, 2010, defendant filed a motion for protective order [D.E. 22]. On December 20, 2010, Mitchell filed a motion to compel discovery, a second copy of his first set of interrogatories, and a response in opposition to the motion to dismiss [D.E. 23–25]. On May 26, 2011, the court directed Mitchell to show cause why the action should not be dismissed for failure to prosecute [D.E. 32]. On June 6, 2011, Mitchell responded to the order to show cause [D.E. 33]. As explained below, the defendant's motion to dismiss is granted and all other motions are denied.

I.

Mitchell alleges that on April 9, 2009, while Briggs was transporting him from Maury Correctional Institution ("Maury") in Hookerton, North Carolina, to Central Prison in Raleigh, North Carolina, defendant "slammed on [the] brakes and threw [Mitchell] into the black steel cage head first" in an attempt to avoid an accident with a truck that had pulled in front of the transport van. Compl. 4. The incident took place near Middlesex, North Carolina. Defendant "never put [Mitchell] in a seat belt upon leaving Maury." Id. Defendant also did not immediately stop to check on Mitchell, but instead "went into pursuit chasing the truck." Id. When defendant was unable to catch the truck, he pulled over and tried to pick Mitchell up from the floorboard of the van. Id. at 4–5. Mitchell twice instructed defendant not to touch him, but to call for emergency medical services ("EMS") because his back and neck hurt. See id. at 5. Defendant did not immediately call EMS, but called both Maury and Central Prison to report the incident, and then drove Mitchell to Central Prison. Id.

Upon arriving at Central Prison, a nurse immediately assessed Mitchell and called paramedics to take him to the hospital. Id. According to Mitchell's complaint, the paramedics placed Mitchell on a backboard but did not strap him down or put a neck brace on him.[1] Id. While lifting Mitchell out of the van, defendant "grabbed the end of the backboard [where Mitchell's] feet were," which caused the paramedic holding the other end of the backboard to drop Mitchell. Id. Mitchell "fell to the ground [and landed] on the back of [his] head and back." Id. Mitchell was taken to the emergency room and examined. See 11/4/10 Pl. Decl., Ex. 2 (4/9/09 WakeMed notes).

---

[1] Mitchell has submitted the emergency room records from the date of the incident, which state that he arrived at the hospital "immobilized on a long spine board, with a hard c-collar and with a CID." 11/4/10 Pl. Decl., Ex. 2 (WakeMed notes).

2

The examining physician noted "the back appears atraumatic[,] . . . . [n]ormal ROM [range of motion] in all joints[,] . . . no cyanosis, no effusions no edema[.]" Id. The examining physician ordered CT scans, which "were unremarkable," found that Mitchell "had good range of motion after removal of c-collar, no significant midline bony tenderness currently," and discharged Mitchell to return to prison. Id. Mitchell alleges that as a result of his injuries "it's hard . . . to come back up" from a bending position and he is "unable to sleep on [his] back." Compl. 6. Mitchell seeks $250,000 in compensatory damages and $250,000 in punitive damages. Id.

II.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50.

To state a claim under 42 U.S.C. § 1983, Mitchell must allege: (1) that defendant deprived him of a right secured by the Constitution and laws of the United States; and (2) that defendant deprived him of this constitutional right under color of any statute, ordinance, regulation, custom,

3

or usage, of any State or Territory. Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Mitchell seeks relief under the Eighth Amendment. To show a violation of the Eighth Amendment, Mitchell "must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires the court to determine whether the deprivation was objectively sufficiently serious, while the second prong requires the court to determine whether the officials acted with a subjectively sufficiently culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard [an] objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Briggs seeks dismissal on the ground that Mitchell's allegations lead at most to a claim for negligence, which fails to rise to the level of a constitutional violation. Mem. Supp. Mot. Dismiss 5–10; see Daniels v. Williams, 474 U.S. 327, 330–31 (1986). Mitchell concedes that "an allegation of simply being transported without a seatbelt does not, in and of itself, give rise to a constitutional claim." Mem. Opp. Mot. Dismiss 10; see Dexter v. Ford Motor Co., 92 F. App'x 637, 641 (10th Cir. 2004) (unpublished) (concluding that the failure to seatbelt an inmate, without more, does not meet the objective component of an Eighth Amendment claim where a correctional officer driving a prison

4

transportation van "strayed onto the median" and "lost control of the van" while speeding and "reach[ing] for food or drink[,]" resulting in transportation van rolling and inmate becoming quadriplegic). Likewise, an automobile incident does not give rise to a federal cause of action merely because it involved reckless or negligent driving. See, e.g., Hill v. Shobe, 93 F.3d 418, 420–22 (7th Cir. 1996); Apodaca v. Rio Arriba Cnty. Sheriff's Dep't, 905 F.2d 1445, 1446–47 (10th Cir. 1990); Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 436 (S.D.N.Y. 2004). Mitchell, however, contends that defendant's decision to "pursue[] the truck at reckless speeds" and to initially call Maury and Central Prison rather than EMS are sufficient to state a claim for deliberate indifference to a serious medical need. Mem. Opp. Mot. Dismiss 10–11.

Defendant responds that he is entitled to the defense of qualified immunity. Mem. Supp. Mot. Dismiss 10–12. Qualified immunity is "'an immunity from suit rather than a mere defense to liability[; and like an absolute immunity,] it is effectively lost if a case is erroneously permitted to go to trial.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992); see Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011). On a motion to dismiss, a defendant is entitled to dismissal "when the face of the complaint clearly reveals the existence of a meritorious [qualified immunity] defense." Brockington v. Boykins, 637 F.3d 503, 505–06 (4th Cir. 2011).

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Pearson, 129 S. Ct. at 815–16; Brockington, 637 F.3d at 506; Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). First, "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right." Pearson, 129 S. Ct. at 815–16. Second, "whether

5

the right at issue was clearly established at the time of defendant's alleged misconduct." Id. at 816. Courts have discretion to decide which of the two prongs should be addressed first. Id. at 818. Thus, defendants are entitled to dismissal on qualified immunity grounds if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Brockington, 637 F.3d at 506; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

As for Mitchell's allegations concerning Briggs's alleged reckless or negligent driving in pursuit of the truck that cut him off, such allegations fail to state a constitutional claim. See, e.g., Hill, 93 F.3d at 420–21. As for Mitchell's allegations concerning Briggs's decision to call Maury and Central Prison and then drive approximately 30 miles to Central Prison instead of immediately calling EMS personnel, the allegations fail to show deliberate indifference to a serious medical need. See Farmer, 511 U.S. at 837; Iko, 535 F.3d at 241. In the context of failing to provide medical care, the objective component requires plaintiff to allege "a serious medical need," which is one that has been diagnosed by a physician or one so obvious that a lay person would recognize the necessity of a doctor's attention. Iko, 535 F.3d at 241. The subjective component requires a defendant to know of and disregard the serious medical needs of the inmate. Id.

Here, even assuming Mitchell's allegations are sufficient to show the necessity of medical attention, the allegations are not sufficient to show that Briggs, in deciding to notify Maury and Central Prison of the accident and to then immediately drive Mitchell to Central Prison, knew of and disregarded risks posed by the serious medical needs. After all, Mitchell had no obvious physical injuries. Moreover, Briggs notified Central Prison, which has medical personnel on staff, and a nurse treated Mitchell immediately upon his arrival at Central Prison. Additionally, "[t]he subjective component [requiring deliberate indifference] sets a particularly high bar to recovery" and Mitchell has not met it. Iko, 535 F.3d at 241. Alternatively, even if the allegations are sufficient, Briggs is

6

entitled to qualified immunity. See, e.g., al-Kidd, 131 S. Ct. at 2083–85; Brockington, 637 F.3d at 505–06; Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005); Foreman v. Unnamed Officers of the Fed. Bureau of Prisons, No. DKC-09-2038, 2010 WL 2720817, at *7–8 (D. Md. July 7, 2010) (unpublished).

III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 16], and DENIES defendant's motion for a protective order [D.E. 22] and plaintiff's motion to compel [D.E. 23]. The Clerk of Court shall close the case.

SO ORDERED. This 20 day of June 2011.

JAMES C. DEVER III
United States District Judge